UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DENISE DONLON

        Plaintiff,

    v.

GLUCK GROUP, LLC, et al.,

        Defendants.

HONORABLE JOSEPH E. IRENAS

CIVIL ACTION NO. 09-5379
        (JEI/KMW)

**OPINION**

**APPEARANCES:**

ROSSI, BARRY, CORRADO & GRASSI, PC
Stephen William Barry
Christine Cote'
2700 Pacific Avenue
Wildwood, NJ 08260
      Counsel for Plaintiff

KENNEDY CAMPBELL LIPSKI & DOCHNEY
Michael L. Simonini
303 Lippincot Drive
Building B
Suite 310
Marlton, NJ 08053
        Counsel for Defendant Gluck Group

KENT & MCBRIDE, PC
Stephen V. McHugh
Denis P. McBride
1040 Kings Highway North
Suite 600
Cherry Hill, NJ 08034
      Counsel for Defendant Patricia Ciavolella-Burgos and Estate
of Debra Elizabeth Lang

WILSON ELSER MOSKOWITZ EDELMAN & DICKER
Jessica Leigh Brennan
200 Campus Drive
Florham Park, NJ 07932
      AND
WILSON ELSER MOSKOWITZ EDELMAN & DICKER
Kelly A. Waters

1

33 Washington Street
18th Floor
Newark, NJ 17102
     Counsel for Defendant American Redi-Bilt, Inc.


**IRENAS**, Senior District Judge:

     This lawsuit arose due to Plaintiff falling down the stairs
of a houseboat in February of 2008.  Presently before the Court,
Defendants Patricia Ciavolella-Burgos, Estate of Debra Lang,
Gluck Group and American Redi-Bilt, Inc. filed Motions for
Summary Judgment (Dkt. Nos. 58-60).  For the following reasons,
the Motions of Defendants Patricia Ciavolella-Burgos, Estate of
Debra Lang, Gluck Group (Dkt Nos. 58-60) will be granted and
American Redi-Bilt's Motion (Dkt. No 60) will be denied.


                              **I.**

     The facts in this case are largely undisputed.  At the time
of the accident, the late Debra Lang owned a 49-foot Aqua Cruiser
houseboat named "All That Jazz" manufactured by Defendant
American Redi-Bilt, Inc. in or around 2005.  (Def. American Redi-
Bilt's L.Civ.R. 56.1 Statement ¶¶ 7-8, Dkt. No. 60)[1]  The boat
has interior living quarters and a large sundeck that occupies
the majority of the boat's roof.  (*Id.* at ¶ 10)  The sundeck is

_____

     [1] This citation refers to the parties' obligation to submit statements
of material facts with summary judgment motions pursuant to Local Civil Rule
56.1(a).

                               2

accessible via a steep staircase located at the rear of the vessel. (*Id.*)

In September 2007, Lang utilized the real estate brokerage services of the Gluck Group to sell the houseboat. (*Id.* at ¶ 12) Defendant Gluck Group appointed Defendant Phyllis Scherr as the listing salesperson. (*Id.*) On January 25, 2008, Ms. Lang passed away and left the boat to her daughter, Defendant Ciavolella-Burgos who also acted as executrix of the estate. (*Id.* at ¶¶ 13-14)

On February 18, 2008, Defendant Scherr showed the boat to Plaintiff, her husband and Plaintiff's daughter for the purposes of encouraging a sale. (*Id.* at ¶¶ 15-17) The tour included a viewing of both the boat's interior and sundeck. (*Id.* at ¶¶ 17-18) On the first tour of the sundeck, Plaintiff ascended and descended the stairs without incident, though, Plaintiff did express concern about the steepness of the steps. (*Id.* at ¶ 22; Pl.'s L.Civ.R. 56.1 Statement ¶ 32)

Nonetheless, Plaintiff decided to view the sundeck a second time. (Def. American Redi-Bilt's L.Civ.R. 56.1 Statement at ¶¶ 20-22) On her second descent, Plaintiff slipped on the uppermost step and fell down the entire staircase. (*Id.* at ¶¶ 23-25) Plaintiff cannot recall any of the details directly before, during or directly after the fall. (*Id.* at ¶¶ 25-31) Due to injuries sustained in the fall, Plaintiff was transported to

Shore Memorial Hospital in Somers Point, New Jersey.  (*Id.* at ¶ 35)

Although Ciavollela-Burgos acted as executrix and eventually inherited the boat, she did not take personal possession until June 19, 2008.  (*See* Def. Ciavollela-Burgos's Br. Ex. B, Dkt. No. 59)  Therefore, at the time of the accident, Defendant Estate of Debra Lang owned "All That Jazz."  (*Id.* at ¶ 4)

On October 21, 2009, Plaintiff filed the Complaint.  (Dkt. No. 1)  On February 1, 2010, Plaintiff filed an Amended Complaint.  (Dkt. No. 17)  The three pending Motions for Summary Judgment were filed between August 17, 2011 and August 19, 2011. (Dkt. Nos. 58-60)

## II.

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party.  *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).

4

"'With respect to an issue on which the non-moving party
bears the burden of proof, the burden on the moving party may be
discharged by 'showing' – that is, pointing out to the district
court – that there is an absence of evidence to support the
nonmoving party's case.'" *Conoshenti v. Public Serv. Elec. &
Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*, 477
U.S. at 323).  The role of the Court is not "to weigh the
evidence and determine the truth of the matter, but to determine
whether there is a genuine issue for trial." *Anderson v. Liberty
Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## III.

Plaintiff alleges five claims in the Amended Complaint - one
for each defendant.  Against Defendant American Redi-Bilt,
Plaintiff alleges a product liability claim for "manufacturing
defects, design defects and/or a failure to warn."  (Compl. ¶ 23,
Dkt. No. 17)  Next, Plaintiff alleges that Defendants Gluck
Group, Ciavollela-Burgos and Estate of Lang acted negligently and
are vicariously liable for the actions of Defendant Scherr.
Against the three remaining Defendants - Scherr, Ciavolella-
Burgos and the Estate of Debra Lang - Plaintiff alleges
negligence.  All Defendants except Scherr move for summary
judgment.

**A.**

The first task is to decide which law governs this case. Plaintiff Donlon argues that maritime law applies. Although Donlon does not describe how maritime law would change the Court's analysis or cite to any admiralty case law concerning principles of negligence, the Court must still determine the law applicable to this case.

Normally, a party seeking to invoke admiralty jurisdiction in tort must satisfy a two-part test of location and connection with maritime activity. *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995). The location test examines "whether the tort occurred on navigable water or whether the injury suffered on land was caused by a vessel on navigable water." *Id.* (citing 46 U.S.C. § 30101). The connection test examines whether the incident has a "potentially disruptive effect on maritime commerce" and whether the general character of the activity giving rise to the incident bears a "substantial relationship to traditional maritime activity." *Id.* (quoting *Sisson v. Ruby*, 497 U.S. 358, 363 (1990)).

The Court need not apply this analysis, however, because Donlon has not pled admiralty jurisdiction. "A plaintiff with a claim cognizable in the district court's admiralty jurisdiction and actionable on other jurisdictional grounds may invoke which ever jurisdiction is desired." *Fedorczyk v. Caribbean Cruise*

6

*Lines, Ltd.*, 82 F.3d 69, 73 (3d Cir. 1996).  To invoke admiralty jurisdiction, a plaintiff must "affirmatively insert a statement in the pleadings identifying the claim as an 'admiralty or maritime claim.'"  *Id.* (quoting Fed.R.Civ.P. 9(h)(1)).

Here, Plaintiff only invoked the Court's diversity jurisdiction under 28 U.S.C. § 1332.  (*See* Compl. ¶ 1, Dkt. No. 17)  "If brought under diversity of citizenship, the forum state's choice of law rules dictate which state law applies." *Fedorczyk,* 82 F.3d at 73.  If maritime law does not apply, there is no dispute that New Jersey state law applies.  Accordingly, the Court will apply New Jersey state law to this case.

## B.

Defendant American Redi-Bilt advances several arguments in support of summary judgment.  First, American Redi-Bilt argues that Plaintiff cannot establish the elements of a products liability claim.  Second, Defendant American Redi-Bilt argues that expert testimony is required to establish a *prima facie* case and evidence proffered by Plaintiff's expert witness, Roy Scott, would be inadmissible at trial.

The New Jersey Products Liability Act provides:

A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it: a. deviated from the design

specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or b. failed to contain adequate warnings or instructions, or c. was designed in a defective manner.

N.J.S.A. 2A:58C-2.

Although not specifically stated, Plaintiff brings claims under subsection b and c - a failure to contain adequate warnings and a design defect.[2] The Court will first determine whether Plaintiff has stated a *prima facie* design defect claim because the elements of a failure to warn claim significantly overlap with a design defect claim. Second, assuming Plaintiff has established a *prima facie* case, the Court will examine the admissibility of Scott's proposed testimony and report.

### 1.

As a threshold matter in a design defect case, plaintiff must show that the "product was defective, that the defect existed when the product left the defendant's control, and that the defect caused injury to a reasonably foreseeable user." *Feldman v. Lederle Labs.*, 97 N.J. 429, 449 (1984); *accord Indian Brand Farms, Inc. v. Novartis Crop Protection Inc.*, 617 F.3d 207, 225 (3d Cir. 2010). "The defect may take one of three forms: a manufacturing flaw, a design defect, or an inadequate

---

[2] There is no allegation that the stairs deviated from their intended design specifications to make up a manufacturing defect claim.

8

warning." *Feldman*, 97 N.J. at 449.  "Because this case involves
a design defect, as distinguished from a manufacturing defect,
plaintiff must show specifically that the product is not
reasonably fit, suitable and safe for its intended or reasonably
foreseeable purposes." *Jurado v. western Gear Works*, 131 N.J.
375, 385 (1993) (quoting *Michalko v. Cooke Color & Chem. Corp.*,
91 N.J. 386, 394 (1982).

This "reflects a policy judgment under a risk-utility
analysis that seeks to determine whether a particular product
creates a risk of harm that outweighs its usefulness." *Indian
Brand Farms*, 617 F.3d at 225.  To prove that a design defect
exists at trial, Plaintiff must also prove "that there was a
reasonable alternative design available and that the omission of
that alternative renders the product unreasonably safe."
N.J.S.A. 2A:58C-3.

Here, Donlon mostly relies on the expert testimony of Roy
Scott and commonsense inferences.[3]  Scott measured the
dimensions of the stairs, calculated their angle of inclination
and opined that the stairs did not meet the American Society for
Testing and Materials ("ASTM")[4] non-binding industry standards.[5]

_____

[3] However, and rather bizarrely, Plaintiff also relies in part on the
deposition of Defendant American Redi-Bilt's expert witness, Augusto Villalon.

[4] Although these standards are not officially codified, they have been
used to develop legal standards as persuasive authority and can help persuade
juries.  *See, e.g., U.S.A. v. Brook Contracting Corp.*, 759 F.2d 320, 327 (3d
Cir. 1985) (defining "coal produced by surface coal mining" as combustible

(*See* Pl.'s Br. Ex. H)  Moreover, the tread depth of the stairs did not comply with the minimum recommended ASTM standards.[6] (*Id.*)  Scott further wrote in his report that the nosing of the stairs would exacerbate the danger, especially when a person descended the stairs.  (*Id.*)  Scott also discovered that the handrail was loose and at a height outside the ASTM standard range.[7]

With this evidence, a reasonable jury could conclude that the stairs were defectively designed because the product was not reasonably fit, suitable and safe for its intended or reasonably foreseeable purposes.

First, the angle of the stairs were in between ASTM standards for the safe design of a staircase and a ladder.  In other words, these stairs did not comply with the ASTM standards either for stairs or ladders.  Despite the stairs being outside the safe range for a ladder, Defendant's expert witness opined that the stairs could only safely have been descended backwards

---

coal that would qualify under the ASTM standards).  The parties have pointed to no legally binding houseboat stair specifications.

[5] Defendant's expert disputes that Plaintiff's expert applied the correct ASTM section.  Because these standards are non-binding industry standards, the correct application is a factual dispute as opposed to a legal dispute.  That dispute must be resolved in favor of Plaintiff Donlon.

[6] The Court is unable to determine from the small excerpt of the ASTM standards whether the expert applied the correct section.

[7] Scott did not inspect the handrail until well after the accident.  There is some dispute whether the handrail was loose at the time of the accident or became loose thereafter.  For the purposes of this Motion, that dispute is resolved in favor of Plaintiff Donlon.

as if descending a ladder.  (Pl.'s Br., Dep. Scott, Ex. I, 15-16)  Given that it was not readily apparent that the stairs should have been descended as a ladder, a reasonably foreseeable use of the stairs would be to descend them normally, as Donlon did.  These design defects increased the risk of a tripping hazard on the stairs.  A reasonable jury could conclude that these stairs were defectively designed.

Defendant argues that non-compliance with ASTM standards does not constitute evidence sufficient to survive summary judgment.  The Court disagrees.  Although the ASTM standards are non-binding and a reasonable jury could discredit their persuasiveness, for summary judgment purposes, the standards as applied to the stairs satisfy Plaintiff's burden of presenting evidence of defect.  By failing to comply with the ASTM standards, a jury could conclude that the stairs were not reasonably fit, suitable and safe for their intended purpose.

With regard to whether the defect existed when the product left American Redi-Bilt's control, a reasonable inference can be made that the stairs have not been altered or modified.[8] Although Plaintiffs have not submitted blueprint designs or photographs of the houseboat as it was constructed in 2005, a reasonable jury could conclude that the stairs and handrail were

_____

[8] American Red-Bilt does not take issue with this element in its moving papers.

11

in the same condition at the time of the accident.

Plaintiff must establish that the defect caused the injury. Although Donlon does not recall the details of how she tripped, she does remember that she tripped when she placed her foot on the first stair. Unlike the negligence claims discussed *infra*, the defective stairs have to cause the injury.[9] It is undisputed, here, that Donlon tripped on the stairs, which caused her injury. Scott opined that the defect in the stairs created a tripping hazard. Therefore, a jury could conclude that the defectively designed stairs caused Donlon to trip and fall down the stairs.

Finally, Plaintiff must submit evidence that there was a reasonably safer alternative to the defective product. Here, Plaintiff relies on commonsense and the ASTM standards. With respect to the tread depth of the stairs and the height of the handrail, the safer alternative is commonsense. Had the product complied with the ASTM standards, the product would have been safer.

While Plaintiff attempts to utilize the same reasoning with regard to the angle of inclination of the stairs, the logic is less persuasive. By reducing the angle of inclination of the

---

[9] This is distinguished from a defendant's negligence causing Plaintiff's injury. "The emphasis of the strict liability doctrine is upon the safety of the product, rather than the reasonableness of the manufacturer's conduct." *Feldman*, 97 N.J. at 479.

stairs the length of the stairs would necessarily increase. Either the top of the stairs would protrude further into the cabin of the boat, or the bottom of the stairs would protrude further aft.  As the photographs of the boat indicate, the bottom of the stairs already nearly abut the stern of the boat. (*See* Pl.'s Br. Ex. H)  Therefore, the only alternative option would have been to allow the stairs to protrude further into the cabin of the boat.  Although the Court could speculate that such an endeavor would be reasonable, the alternative may not have been reasonable from a marine engineering standpoint.[10]  For the purposes of this Motion, however, the commonsense ASTM standard solutions to the handrail, tread depth and nosing of the stairs satisfy Plaintiff's obligation to suggest a reasonable alternative to the design defect of the staircase.

Plaintiff having presented sufficient evidence as to every element of the design defect claim, American Redi-Bilt's Motion will be denied.

## 2.

A failure to warn claim, in significant part, overlaps with the defective design claim.  "A manufacturer may avoid liability 'for harm caused by a failure to warn if the product contains an

---

[10] For example, a further intrusion in the cabin could have disrupted other essential mechanical functions of the boat.

adequate warning or instruction.'" *Matthrews v. University Loft Co.*, 387 N.J.Super. 349, 356 (App.Div. 2006) (quoting N.J.S.A. 2A:58C-4). These warnings or instructions could be preprinted instructions that accompany the product or some kind of sign posted near the product. *Id.* at 357.

Before the Court weighs the adequacy of a warning, however, there must have been a duty to warn. *Id.* A manufacturer has a duty to warn for all latent defects. *Id.* To contrast, in general, "where the dangers or risks are obvious, no warning is necessary." *Id.* at 359. Some case law suggests, though, "whether a duty to warn exists when the danger is obvious involves a weighing of the relationship of the parties, the nature of the risk, and the public interest." *Id.* at 357 (quoting *Campos v. Firestone Tire & Rubber Co.*, 98 N.J. 198, 207 (1984)). Furthermore, a defendant must have actual or constructive knowledge of the danger of the product. *Feldman*, 97 N.J. 452. In analyzing constructive knowledge, relevant factors include "the scientific, technological, and other information available when the product was distributed." *Id.*

Here, there is a genuine issue of material fact whether the danger was latent or obvious. On one hand, steep stairs are obviously dangerous. On the other hand, a reasonable jury could find that small deviations from ASTM standards in treading and handrail positioning are latent defects. No reasonable person

14

looks at stairs and immediately gauges the safety risk inherent in the tread depth.  Moreover, a loose handrail would not be an obvious risk.[11]  "When reasonable minds may differ as to whether the risk was obvious or generally known, the issue is to be decided by the trier of fact." *Mathews*, 387 N.J.Super. at 359 (quoting *Restatement (Third) of Torts: Products Liability § 2* comment j (1998)).  Even assuming some of the defects were obviously dangerous, the degree to which the more latent alleged defects - such as the treading and nosing of the stairs - contributed to the accident is a factual dispute that only a jury can resolve.

     Furthermore, if, as Defendant's expert Villalon asserts, the stairs could only be descended safely backwards, the risk of falling by descending normally would not be obvious or generally known.[12]  A reasonable person would not approach steep stairs and assume the only safe way to descend was backwards.  In addition, the ASTM standards Plaintiff submits are from the year 1999.  American Redi-Bilt constructed "All That Jazz" in 2005.  Therefore, the ASTM standards at the time of construction and distribution of the vessel put American Redi-Bilt on

---

[11] It is unclear from the papers whether Plaintiff alleges that the handrail was loose due to a design defect or negligent maintenance.

[12] The Court merely notes here that although there has been no motion to strike Villalon's report, the opinions contained therein read more like a legal brief than an expert report.

constructive notice of the potential danger of the stairs.

If there was a duty to warn about the defective stairs, then Defendants breached that duty as there were no warnings given to Plaintiffs.  Defendant American Redi-Bilt has provided no evidence of a preprinted instruction booklet or warning included with the original product.

Accordingly, American Redi-Bilt's Motion for Summary Judgment with regard to the failure to warn claim will be denied.


### C.

Having determined that Plaintiffs have established a *prima facie* case, the Court must resolve the attack on the admissibility of Scott's report and proposed testimony.  First, Plaintiff argues that Roy Scott is not qualified.  Second, Plaintiff argues that even if Scott is qualified, his opinion is a net opinion.


### 1.

With regard to Scott's qualifications, American Redi-Bilt argues that Scott is not qualified as an expert in marine architecture or engineering.  Therefore, Scott's testimony regarding design defect is outside of his expertise.

This argument mischaracterizes the purpose and substance of

16

Scott's report and proposed testimony.  Plaintiffs seek to certify Scott as an expert marine surveyor.  In this regard, Scott has inspected vessels for insurance companies and individual boat owners.  Scott has also worked as a marine inspector and a marine investigator in which he helped repair boats, inspected vessels and "conducted over 400 casualty and/or misconduct investigations of Merchant Marine personnel.  (Pl.'s Br. Ex. B)

Scott is qualified to take measurements and compare those measurements to ASTM guidelines.  It does not take an expert in marine architecture and engineering to determine whether stairs comply with ASTM standards.  Although a marine engineering expert perhaps would have been helpful to establish a reasonable alternative design to the stairs' angle of inclination, a marine engineering expert was not necessary to establish a *prima facie* case here.  Only the jury can determine whether Scott's opinions are persuasive enough to win at trial.

## 2.

American Redi-Bilt also attacks Scott's opinion as a net opinion.  Defendant argues that Scott's opinions are inadmissible because they are based on speculation and conjecture as opposed to reliable methodology.

Fed.R.Evid. 702 provides that:

17

> If scientific, technical or other specialized knowledge
> will assist the trier of fact to understand the evidence
> or to determine a fact in issue, a witness qualified as
> an expert by knowledge, skill, experience, training, or
> education, may testify thereto in the form of an opinion
> or otherwise, if (1) the testimony is based upon
> sufficient facts or data, (2) the testimony is the
> product of reliable principles and methods, and (3) the
> witness has applied the principles and methods reliably
> to the facts of the case.

"Rule 702 has three major requirements: (1) the proffered witness must be an expert, i.e. must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008) (Irenas, S.D.J., sitting by designation) (internal citations omitted).

Therefore, the Court must determine at the outset whether the "expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993).

The Court finds no merit to Defendant's argument. Scott utilized his expertise to take measurements, make mathematical calculations and compare those calculations to ASTM standards.

American Redi-Bilt further attacks Scott's opinions on the basis of the many tests he could have done but did not do. For example, "Scott conceded that he did not review any studies to determine whether the construction of the staircase on a

18

houseboat that complied with ASTM F1166, Section 31.8 reduced the number of falls on a houseboat." (Def.'s Br. 23)  Of course, at trial, Defendant will be free to cross examine Scott regarding the ASTM standards and expose to the jury Scott's lack of academic research regarding any marginal increase in safety that the ASTM standards provide.  However, these supposed failures are irrelevant to Scott's opinions regarding measurements and their application to ASTM standards.  Scott's testimony cannot be deemed wholly inadmissible for a failure to have expertise over subjects for which Scott is not offered as an expert. Accordingly, for the purposes of this Motion, the Court rejects Defendant's arguments to strike Scott's expert opinions.

### D.

Defendants Ciavollela-Burgos and Estate of Debra Lang ("Boat-owner Defendants") set forth three arguments in their moving papers.  First, Plaintiff has not established a *prima facie* case of negligence.  Boat-owner Defendants  emphasize that Plaintiff has submitted no evidence that Boat-owner Defendants' negligence was the proximate cause of Plaintiff's fall.  Second, Ciavollela-Burgos moves for summary judgment independently on the ground that she did not take personal ownership of the boat through inheritance until after Plaintiff's accident.  Finally, if summary judgment is not granted, Boat-owner Defendants move

for summary judgment on their cross-claim for indemnity from American Redi-Bilt.

In response, Plaintiff perfunctorily argues that Defendants Scherr and Gluck Group, hired as realtor agents of Boat-owner Defendants, owed Plaintiff a duty of care as a business invitee. In addition, Boat-owner Defendants "are vicariously liable for the negligence of their agent." (Pl.'s Br. 18)  Plaintiff argues that vicarious liability extends to both Boat-owner Defendants.

For several reasons, vicarious liability is inapplicable here.  First, Plaintiff did not plead vicarious liability in the Complaint.  "A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Bell v. City of Philadelphia*, 275 Fed.Appx. 157, 160 (3d Cir. 2008) (internal quotations omitted) (quoting *Shanahan v. City of Chi.*, 82 F.3d 776, 781 (7th Cir. 1996).  Against Boat-owner Defendants in the Complaint, Plaintiff pled negligence based on a theory of premises liability insofar as Plaintiff's status was a business invitee.  Therefore, a second reason vicarious liability is inapplicable is that Plaintiff has pled a direct theory of liability.  Vicarious liability is thus unnecessary and superfluous.  Finally, a homeowner's duty to a business invitee is nondelegable.  *See Sanna v. Nat'l Sponge Co.*, 209 N.J.Super. 60, 66 (App.Div. 1986).  Ordinary principles of agency and *respondeat superior* cannot apply where the principal

20

cannot legally delegate the duty in question.

Although Donlon makes no attempt to establish the elements of a claim of premises liability in her opposition papers, the Court will nonetheless address the claim.  To make out a *prima facie* case for negligence, a plaintiff must prove the well-known elements of duty, breach, causation, and damages.  Brokers and homeowners owe distinct and different concurrent duties to potential home buyers.[13]  *See Hopkins v. Fox & Realtors*, 132 N.J. 426, 445 (1993).  "The homeowner's duty to the business guest will be in most circumstances much broader than a broker's duty toward a customer."  *Id.*  A landowner "owe[s] a duty of reasonable care to guard against any dangerous conditions on his or her property that the owner either knows about or should have discovered."  *Id.* at 434 (citing *Handleman v. Cox*, 39 N.J. 95, 111 (1963).  Therefore, Plaintiff's reliance solely on vicarious liability, however misplaced, would have served to decrease the scope of the duty owed by Boat-owner Defendants to Plaintiff.

Here, Defendant Ciavollela-Burgos did not owe a duty to Plaintiff because, at the time of the accident, she was not the owner of the houseboat.  Although the exhibit proving title is hardly legible, Defendant Ciavollela-Burgos avers that she did

---

[13] Although Boat-owner Defendants owned a boat, as distinguished from a real property homeowner, the principles of premises liability are the same.

not personally own the boat until June 19, 2008.[14]   (*See* Def.'s
Br. Ex. B, Dkt. No. 59)   If Defendant Ciavollela-Burgos does not
owe Donlon a duty, then the claim for negligence fails.
Accordingly, Defendant Ciavollela-Burgos's Motion for Summary
Judgment will be granted.[15]

On the other hand, as the owner of the houseboat, Estate of
Lang owed a duty to Plaintiff.   The duty of care owed to
Plaintiff was to "use reasonable care to make the premises safe,
and this includes the duty to make a reasonable inspection to
discover defective conditions."   *Handleman*, 39 N.J. at 111.

The issue then becomes whether Estate of Lang breached that
duty in failing to fix the stairs and the handrail.   With regard
to the stairs, no reasonable inspection would have uncovered a
defective condition.   A reasonable houseboat owner does not take
measurements of every square inch of his or her vessel to compare
those measurements to ASTM standards.   Furthermore, there is no
evidence of any prior tripping accidents on the stairs.   Any
defect in the stairs themselves would not have been discovered by

---

[14] Although Plaintiff disputes this fact in her Response to Undisputed
Facts, Donlon only states that "[i]t appears that Lang died testate, and as
such the property in her estate went to her daughter on her death . . . this
distinction is not relevant to any issue on summary judgment."   (Pl.'s
L.Civ.R. 56.1 Statement to Estate of Debra Land at ¶ 4)   Donlon makes no legal
argument in her brief with regard to this fact.

[15] The Court notes that the following discussion of Estate of Lang would
apply equally to Ciavollel-Burgos.   Therefore, the Motion for Summary Judgment
can also be granted on those separate and independent grounds.

a reasonable inspection.

However, a reasonable inspection would have discovered that the handrail had become loose.  "A homeowner is intimately acquainted with his or her residence and is consequently aware of many of the problems that remain hidden to the untrained or unfamiliar eye." *Hopkins*, 132 N.J. at 445.  It is no excuse that the executrix of the estate had not yet visited the houseboat since the passing of Ms. Lang.  (*See* Def.'s Br. 28, Dkt. No. 59)  Indeed, this fact tends to support the inference that Estate of Lang was derelict in her duty to inspect the premises.[16]

By a preponderance of the evidence, a claim of negligence must also establish causation - both direct and proximate.  "Causation in fact depends on whether an act or omission played a material part in bringing about an event." *Fedorcyzk v. Caribbean Cruise Lines, Ltd*., 82 F.3d 69, 73 (3d Cir. 1996).  The Defendant's negligent conduct must be the cause in fact of the injury.

Defendant Estate of Debra Lang relies heavily upon the reasoning of *Fedorcyzk*.  There, Plaintiff slipped and fell in the shower of a cruise boat.  *Id.* at 72.  Plaintiff alleged that the accident was caused due to an inadequate amount of textured

---

[16] Although Estate of Lang cannot technically inspect a property as it is not a human, the executrix could have inspected the property.  Here, Defendant Ciavollela has not been sued in her capacity as executrix of the Estate of Lang.

non-slip stripping on the shower floor.  *Id.*  The Third Circuit affirmed the grant of summary judgment for Defendants because Plaintiff could present no evidence of whether she was standing on the textured strip at the time of the slip and fall.  *Id.* at 76.  Because people fall under ordinary circumstances, the Court reasoned, Plaintiff had the burden to prove that it was Defendant's negligence that caused the accident.  *Id.* at 74.  The Court held that Plaintiff failed to present evidence that Plaintiff's foot was not actually on the textured strip at the time of the accident.  *Id.* at 75.  Therefore, Plaintiff could not prove that the lack of textured strips was the cause in fact of her slip and fall.  *Id.*

The reasoning in *Fedorcyzk* is applicable to the instant case.  The only negligence established thus far is Estate of Lang's failure to inspect and fix the loose handrail.  However, Plaintiff has not set forth any evidence that the loose handrail was a cause in fact of her injury.  Indeed, Donlon sets forth no argument for liability in her opposition papers as to Boat-owner Defendants aside from vicarious liability.  (*See* Dkt. No. 61) The Court ascertains through Donlon's edited deposition submitted by Defendants, that Donlon has no recollection of how the fall happened.  "That's all I remember is slipping on my foot." (Def.'s Br. Ex. F, 36, Dkt. No. 59)  Plaintiff also does not recall whether she grabbed the handrail or not.  (*Id.* at Ex. F,

24

95-96)  Although Plaintiff's daughter saw the event and is the
only witness, she refuses to submit evidence for these
proceedings.  (*See id.* at Ex. F, 38)

Absent any evidence regarding whether the negligently
maintained handrail was the cause in fact of Plaintiff's
injuries, there is no genuine issue of material fact for a jury
to determine.  Plaintiff has failed to carry her burden as to the
element of causation.  Accordingly, Defendant Estate of Lang's
Motion for Summary Judgment will be granted.[17]


**E.**

The last Motion for Summary Judgment is that of Defendant
Gluck Group.  Donlon argues that Gluck Group is vicariously
liable for the negligence of its realtor employee Scherr.

In its moving papers, Gluck Group argues that Defendant
Scherr is an independent contractor, which eliminates vicarious
liability.  Gluck further argues that if Scherr is not an
independent contractor, Scherr did not act negligently.  For the
reasons below, the Court finds that Scherr did not act
negligently and, therefore, the Court need not reach the issue of

---

[17] Because the Court will grant summary judgment in favor of Boat-owner
Defendants, the cross-motions for indemnification are rendered moot and will
be dismissed.

whether Scherr was an independent contractor.[18]

A *prima facie* case of negligence requires a showing of duty, breach, causation, and damages.  Realty brokers owe a concurrent, but distinct, duty from homeowners to potential buyers.  "[A] broker is under a duty to conduct a reasonable broker's inspection when such an inspection would comport with the customary standards governing the responsibilities and functions of real-estate brokers."  *Hopkins*, 132 N.J. at 444.  "Those standards should ordinarily be elucidated by witnesses who are expert in the real-estate brokers' field."  *Id.*

Here, although Scherr certainly owed a duty to Donlon, the scope of that duty is unclear because Plaintiff has not submitted expert testimony on the issue.  This failure alone, however, does not necessarily warrant entry of summary judgment in Gluck's favor.  If Scherr breached a duty that clearly falls within the conduct of a reasonable broker, then no expert testimony would be required.  The inquiry is fact specific and requires an inquiry into whether it would be reasonable under the circumstances "for the broker to have inspected the premises."  *Id.*  If an inspection is warranted under the circumstances, then the "inspection would impose on the broker the duty to warn of any discoverable physical features or conditions of the property that

_____

[18] Unfortunately, Scherr is representing herself and has not made a motion for summary judgment.  Nothing in the record allows the Court to enter judgment in her favor.

pose a hazard or danger to such visitors." *Id.* at 445.

Although this Court doubts that under these circumstances Plaintiff has submitted adequate evidence regarding Scherr's duty, the Court will complete the analysis for the sake of thoroughness. In fulfilling the broker's duty, Scherr inspected the houseboat. She walked up the stairs without difficulty and utilized the handrail without a problem. Considering Scott opined that the handrail was loose, however, this would be a material issue of fact that the jury would have to resolve.

With respect to the stairs, Scherr, similar to the Boat-owner Defendants, did not have a duty to compare the design of the stairs against ASTM standards. The stairs did not otherwise contain a defect that a reasonable inspection would uncover. Therefore, Scherr did not breach her duty with regard to the stairs.

The most significant problem with Donlon's claim, and similar to the claim against Boat-owner Defendants, is that Plaintiff has not presented any evidence with regard to causation. There is no evidence that Donlon ever grabbed the handrail or that the handrail contributed to Donlon's fall. Even assuming *arguendo* that Plaintiff submitted enough evidence with regard to a broker's duty, and Plaintiff breached that duty, there is no evidence that Scherr's negligence caused this accident. As a result, Scherr cannot legally be held liable and

Defendant Gluck Group, whether or not vicarious liability applies in this case, cannot be held liable.  Accordingly, Defendant Gluck Group's Motion for Summary Judgment will be granted.

### IV.

As the previous discussion details, this case is most fairly characterized as a product liability case, not a claim for negligence or vicarious liability.  Accordingly, the Motions for Summary Judgment of Defendants Patricia Ciavolella-Burgos, Estate of Debra Lang, Gluck Group will be granted and American Redi-Bilt's Motion for Summary Judgment will be denied.

Date: 12/2/11                          ___/s/ Joseph E. Irenas___
                                       **JOSEPH E. IRENAS, S.U.S.D.J.**